## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:24-cv-24734-GAYLES

|  |  |
|---|---|
| **BRIGHTLINE TRAINS FLORIDA LLC,** | ) |
|  | ) |
|  | ) |
| Plaintiff**,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **NATIONAL MEDIATION BOARD,** | ) |
|  | ) |
|  | ) |
| Defendant, | ) |
|  | ) |
| and | ) |
|  | ) |
| **TRANSPORT WORKERS UNION OF AMERICA,** | ) |
|  | ) |
|  | ) |
| Intervenor. | ) |
|  | ) |

### MEMORANDUM OF LAW OF TRANSPORT WORKERS UNION OF AMERICA IN OPPOSITION TO BRIGHTLINE FLORIDA'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

RESPONSE TO BRIGHTLINE'S REQUEST FOR A HEARING ............................. vi

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

DUTY OF CARRIER UNDER SECTION 2 FIRST OF THE RAILWAY LABOR ACT .......... 3

   I.   Section 2 First Imposes On Carriers And Unions A Judicially Enforceable Duty To Exert Every Reasonable Effort To Make And Maintain Agreements, And To Deal With Each Other In Good Faith ........................................................................................ 3

ARGUMENT .................................................................................................................... 6

   I.   TWU HAS STATED AN ENFORCEABLE CLAIM ................................................. 6

      A. The Standard for Allowing a Section 2 First Claim to Proceed is a Low Threshold and TWU's Allegations are Sufficient to Survive a Motion to Dismiss ................ 6

      B. Jurisdictional Challenges and Rail Union Lawsuits Over the Company's Failure to Bargain are Two Sides of the Same Coin .......................................................... 8

      C. Brightline Florida Confuses the Section 2 Ninth Duty to "Treat With" and the Section 2 First Duty to Exert Every Reasonable Effort ..................................... 10

      D. Brightline Florida's Position that the Company is Not Covered by the RLA is Not a Speculative Harm, but Rather is Fundamentally at Odds with Section 2 First . 12

   II.   THERE IS NO FIRST AMENDMENT ISSUE FOR BRIGHTLINE FLORIDA ......13

      A. No One is Seeking to Block Brightline FL From Having Their APA Claim Heard ...................................................................................................................13

      B. There Is No Conflict Between a Union's Counterclaim and an Employer's Challenge to RLA Jurisdiction – Brightline's Own Cases Confirm This ........... 14

      C. *Bill Johnson's Rests, Inc.* Does Not Apply And Makes No Sense in This Context . ...................................................................................................................16

III.     BRIGHTLINE FLORIDA HAS ADVANCED NO VALID ARGUMENT FOR WHY A STAY WOULD BE JUSTIFIED ........................................................................... 18

CONCLUSION ......................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>
### CASES

<u>Page</u>

*Air Line Pilots Assn. Intl. v. Spirit Airlines, Inc.*,
  Case No. 08-CV-13785, 2009 BL 146394 (E.D. Mich. June 18, 2009) ................................. 12

*Air Line Pilots v. Transamerica Airlines, Inc.*,
  817 F.2d 510 (9th Cir. 1987) ................................................................................. 6, 7

*Am. Airlines, Inc. v. Air Line Pilots Ass'n*,
  169 F. Supp. 777 (S.D.N.Y. 1958) ......................................................................... 12

*Am. W. Airlines v. Nat'l Mediation Bd.*,
  969 F.2d 777 (9th Cir. 1992) ................................................................................. 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 7, 8

*Association of Flight Attendants v. Horizon Air Industries, Inc.*,
  976 F. 2d 541 (9th Cir. 1992) ......................................................................... 5, 11, 12

*Bill Johnson's Rests., Inc. v. NLRB*,
  461 U.S. 731 (1983) .............................................................................. 2, 16, 17, 18

*Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*,
  394 U.S. 369 (1969) ....................................................................................... 4, 17

*California Motor Transport Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ......................................................................................... 18

*Chicago & North Western Transp. Co. v. UTU*,
  402 U.S. 570 (1971) ................................................................................... *passim*

*Clinton v. Jones*,
  520 U.S. 681 (1997) ......................................................................................... 18

*Delpro Co. v. Bhd. Ry. Carmen*,
  519 F. Supp. 842 (D. Del. 1981) ...................................................................... 11, 15

*Delpro Co. v. Natl. Mediation Bd. of the U.S.*,
  509 F. Supp. 468 (D. Del. 1981) .................................................................... 8, 9, 15

*Delta Air Lines, Inc. v. Air Line Pilots Ass'n. Int'l.*,
  238 F. 3d 1300 (11th Cir 2001) ....................................................................... 4, 5, 6

*Garcia-Mir v. Meese*,
  781 F.2d 1450 (11th Cir. 1986) ............................................................................ 19

*Grace, Inc. v. City of Miami,*
  685 F. Supp. 3d 1365 (S.D. Fla. 2023) ................................................................ 19

*Hart v. Charter Commc'ns, Inc.,*
  No. SA CV 17-0556-DOC (RAOx), 2019 BL 508695 (C.D. Cal. Aug. 1, 2019) .................. 19

*Herrera v. Command Sec. Corp.,*
  837 F.3d 979 (9th Cir. 2016) ........................................................................... 12

*Indep. Fed'n of Flight Attendants v. Trans World Airlines, Inc.,*
  682 F. Supp. 1003 (W.D. Mo. 1988) ................................................................. 12

*Int'l Longshoremen's Ass'n, AFL-CIO v. N.C. Ports Auth.,*
  463 F.2d 1 (4th Cir. 1972) ............................................................................ 9, 15

*Johnson & Hardin Co. v. NLRB,*
  49 F.3d 237 (6th Cir. 1995) ........................................................................... 16

*Klemens v. Air Line Pilots,*
  736 F.2d 491 (9th Cir. 1984) .......................................................................... 17

*Landis v. N. Am. Co.,*
  299 U.S. 248 (1936) .................................................................................... 19

*Machinists Dist. 100 v. Transportes Aeros Mercantiles Pan Americandos,*
  924 F. 2d 1005 (11th Cir. 1991) ....................................................................... 5

*Murphy Oil USA, Inc. v. NLRB,*
  808 F.3d 1013 (5th Cir. 2015) ........................................................................ 16

*Nken v. Holder,*
  556 U.S. 418 (2009) .................................................................................... 19

*NLRB v. Insurance Agents International,*
  363 U.S. 477 (1960) ..................................................................................... 4

*NLRB v. Reed & Prince Mfg,*
  205 F.2d 131 (1st Cir. 1953) ........................................................................... 4

*Northwest Airlines Corp. v. Association of Flight Attendants,*
  483 F.3d 160 (2d Cir. 2007) ........................................................................... 10

*O'Boyle v. Town of Gulf Stream,*
  No. 19-cv-80196-BLOOM/Reinhart, 2020 BL 217613 (S.D. Fla. Mar. 27, 2020) ............... 19

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
  508 U.S. 49 (1993) ..................................................................................... 18

iv

*Robinson v. Pan Am. World Airways, Inc.*,
    777 F.2d 84 (2d Cir. 1985) ........................................................................ 17

*SEC v. MCC Int'l Corp.*,
    No. 2:22-cv-14129-KMM, 2023 BL 311939 (S.D. Fla. Mar. 14, 2023) ............................... 19

*Smith v. Miami-Dade County*,
    621 F. App'x 955 (11th Cir. 2015) ........................................................................ 18

*Stone Tech. (HK) Co. v. GlobalGeeks, Inc.*,
    No. 20-cv-23251-BLOOM/Louis, 2021 BL 8077 (S.D. Fla. Jan. 11, 2021) ........................... 9

*Teamsters v. Tex. Int'l Airlines, Inc.*,
    717 F.2d 157 (5th Cir. 1983) ........................................................................ 3, 18

*Union Pac. R.R. v. Locomotive Engineers*,
    558 U.S. 67 (2009) ........................................................................ 3

*United Air Lines, Inc. v. Air Line Pilots Ass'n*,
    563 F. 3d 257 (7th Cir. 2009) ........................................................................ 4

*United States v. O'Brien*,
    391 U.S. 367 (1968) ........................................................................ 17

*Varona v. LTA Logistics, Inc.*,
    No. 14-Civ-24094-COOKE/TORRES, 2016 BL 99971 (S.D. Fla. Mar. 30, 2016) ................. 9

*Virginian Ry. v. Sys. Fed'n No. 40*,
    300 U.S. 515 (1937) ........................................................................ 5, 10, 11

*Washington Legal Foundation v. Friedman*,
    13 F. Supp. 2d 51 (D.D.C. 1998) ........................................................................ 17

*Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*,
    Case No. 16-cv-60695-GAYLES, 2016 BL 309810 (S.D. Fla. Sept. 20, 2016) ................. 2, 19

## STATUTES

45 U.S.C. § 151 *et seq.* ........................................................................ *passim*

## <u>RESPONSE TO BRIGHTLINE'S REQUEST FOR A HEARING</u>

Brightline FL argues that a hearing is warranted because TWU's claim "implicates important First Amendment rights and a novel interpretation of a federal statute." There are no First Amendment rights implicated and TWU's claim does not involve a novel interpretation of the RLA - Brightline FL has simply misread the statute. TWU is agnostic about whether a hearing is warranted.

## <u>INTRODUCTION</u>

Brightline Trains Florida, LLC's ("Brightline FL," "Brightline Florida," or "Company") motion to dismiss or stay the Transport Workers Union of America's, AFL-CIO ("TWU" or "Union") counterclaim in this matter should be denied because: (1) TWU has stated a claim for which relief can be granted and (2) Brightline FL has not met its burden to satisfy the factors necessary to warrant a stay.

TWU's counterclaim asserts that, as a rail carrier, Brightline FL has a "duty to exert every reasonable effort to make and maintain agreements with TWU concerning rates of pay, rules, and working conditions" of the Company's employees under Section 2 First of the Railway Labor Act ("RLA"), 45 U.S.C. § 152, First. A company's failure to "exert every reasonable effort" is a violation of the RLA that is judicially enforceable. Jurisdictional challenges to RLA carrier status, and rail and airline union lawsuits over a company's failure to bargain are two sides of the same coin – unions have long been able to bring lawsuits alleging a failure to bargain as a judicially recognized method of fully participating in the decision over the company's status under the RLA.

Much of Brightline FL's argument is based around a misunderstanding or confusion, of the Company's obligations "to treat with" TWU as the certified representative of Brightline FL's On-Board Service Employees under Section 2 Ninth (45 U.S.C. 152, Ninth) with its duty to exert every reasonable effort under Section 2 First of the RLA. Brightline FL may be "treating with" TWU by meeting with the Union, but because of Brightline FL's firm conviction that it is not covered by the RLA and will not ultimately be bound by an RLA collective bargaining agreement, the Company is simply going through the motions in superficial negotiations in violation of Section 2 First.

Brightline FL has attempted to make a First Amendment issue out of TWU's counterclaim, but there is no First Amendment issue here because there is no aspect of TWU's counterclaim that

interferes with Brightline FL receiving a full judicial review of its APA claim. Further, the regulatory and administrative scheme of the National Labor Relations Act ("NLRA") and the RLA are so fundamentally different in this area that the principles from *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731(1983) would not be ported over to the RLA.

Brightline FL has effectively made no argument to support why a stay would be justified. The Company cited *Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*, Case No. 16-cv-60695-GAYLES, 2016 BL 309810 (S.D. Fla. Sept. 20, 2016) (Gayles, J.) ("*Werteks*") which references the traditional four factors for the standard on when to grant a stay in the Southern District of Florida. The Company has also cited several out-of-circuit district court cases that use other factors. Regardless, Brightline FL has not met its burden to satisfy the factors necessary to justify a stay.

## FACTUAL BACKGROUND

On August 8, 2024, TWU and On-Board Service Employees of Brightline FL applied with the National Mediation Board ("NMB" or "Board") seeking a determination that the TWU is their collective bargaining representative. *See* Declaration of John Feltz ¶ 3 (ECF No. 28-2). Brightline FL contested the NMB's jurisdiction over the Company and the Company's status as a carrier, but the NMB determined that Brightline FL is a carrier under the RLA. ECF No. 28-2 ¶¶ 4 & 6.

On December 4, 2024, Brightline FL sued seeking to overturn the NMB's decision. On January 14, 2025, the NMB tallied the votes and found a majority for TWU. ECF No. 28-2 ¶ 7. On January 15, the Board certified TWU as the collective bargaining representative under the RLA of Brightline FL's On-Board Service Employees. ECF No. 28-2 ¶ 8.

On January 29, 2025, TWU served a notice on Brightline FL under Section 6 of the RLA, 45 U.S.C. § 156, of TWU's intent to negotiate with Brightline FL over the rates of pay, rules and working conditions of Brightline FL's On-Board Service Employees. ECF No. 28-2 ¶ 9.

## DUTY OF CARRIERS UNDER SECTION 2 FIRST OF THE RAILWAY LABOR ACT

I.     **Section 2 First Imposes On Carriers And Unions A Judicially Enforceable Duty To Exert Every Reasonable Effort To Make And Maintain Agreements, And To Deal With Each Other In Good Faith**

Section 2 First of the RLA requires that carriers and unions:

...exert every reasonable effort to make and maintain agreements concerning rates of pay rules and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

This provision is expansively written. And it expressly requires more than basic compliance with the commands of other provisions of the statute (such as the prohibition against interference with a party's designation of a representative for bargaining (Section 2 Third), the right of employees to choose union representation without carrier influence or coercion (Section 2 Fourth), the prohibition against violating the status quo provisions of the Act (Section 2 Seventh and Section 6), and the requirement that parties arbitrate contract interpretation disputes (Section 3)). Section 2 First contains its own direct, broad mandate that both carriers and unions must <u>exert every reasonable effort</u> to make and maintain agreements and deal with each other in good faith.

In *Chicago & North Western Transp. Co. v. UTU*, 402 U.S. 570, 574 (1971) ("*CNW v. UTU*"), the Supreme Court held that Section 2 First is "more than a mere statement of policy or exhortation to the parties; rather, it was designed to be a legal obligation, enforceable by whatever appropriate means might be developed on a case-by-case basis." *Id.* at 577. The Court further held that "Congress intended enforcement of § 2 First to be overseen by appropriate judicial means," *id*. at 581, rejecting the court of appeals' interpretation "construing § 2 First as a statement of the purpose and policy of the subsequent provisions of the Act, and not as a specific requirement anticipating judicial enforcement," *id*. at 572; *see also Union Pac. R.R. v. Locomotive Engineers*, 558 U.S. 67 (2009); *Teamsters v. Tex. Int'l Airlines, Inc.*, 717 F.2d 157, 161 (5th Cir. 1983) ("The

3

carrier has a duty under the [RLA], Section 2 First…to maintain agreements and the duty is enforceable by the district courts…"); *United Air Lines, Inc. v. Air Line Pilots Ass'n,* 563 F. 3d 257, 274 (7th Cir. 2009) ("*United v. ALPA*") ("The RLA seeks to encourage collective bargaining and to avoid wasteful strikes…In order to accomplish this goal, Section 2 First of the RLA imposes on both labor and management a duty to exert every reasonable effort to make and maintain agreements…."); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n. Int'l.*, 238 F. 3d 1300, 1304, 1308 (11th Cir 2001) ("*Delta v. ALPA*")(Section 2 First imposes a judicially enforceable "statutory obligation 'to exert every reasonable effort to make and maintain agreements'").

The *CNW v. UTU* court described the obligation imposed under Section 2 First as "the heart of the Railway Labor Act" and as "central to the effective working of the Railway Labor Act," such that failure to bargain in good faith is actionable under Section 2 First, so "the right of the aggrieved party is not to prove illusory." 402 U.S. at 578, citing *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377-78 (1969). The *CNW v UTU* Court stated that "[t]he strictest compliance with the formal procedures of the Act is meaningless if one party goes through the motions with 'a desire not to reach an agreement.'". *Id.* at 578. The Court then concluded that the duty imposed under Section 2 First is comparable to the "duty under the National Labor Relations Act to bargain in good faith" (*id.* at 578 and n. 11), that the "'duty of management to bargain in good faith is essentially a corollary of its duty to recognize the union'" (*id.* at 574-575, quoting *N.L.R.B. v. Insurance Agents International*, 363 U.S. 477, 484-485 (1960)), and that the duty is certainly violated when a party's actions evidence "desire not to reach an agreement" (*id.* at 578-79 and n.11, citing *N.L.R.B. v. Reed & Prince Mfg.*, 205 F.2d 131, 134 (1st Cir. 1953)). The Court concluded that "We think that at least to this extent the duty to exert every reasonable effort is of the essence." *Id.* at 579.

Since the Supreme Court's decision in *CNW v UTU*, the appellate courts have held various actions by carriers and unions to be violative of Section 2 First where there was no violation of an agreement or any other part of the statute.

In *Machinists Dist. 100 v. Transportes Aeros Mercantiles Pan Americandos*, 924 F. 2d 1005, 1008, 1010-11 (11th Cir. 1991), the Court of Appeals for the Eleventh Circuit held that Section 2 First contains an implicit prohibition against unilateral changes once bargaining begins. In *Association of Flight Attendants v. Horizon Air Industries, Inc.,* 976 F. 2d 541 (9th Cir. 1992), the Ninth Circuit held that a company had violated Section 2 First by effectively refusing to bargain with the union; when it just went "through the motions of bargaining" and engaged in "evasive and dilatory tactics." The court observed that Section 2 First requires more than mere compliance "with the formal procedures of the RLA" such as by meeting and exchanging proposals; the statute set standards concerning "the quality of negotiations," so courts must assess whether a party has "engaged in reasonable efforts" or has "merely gone through the motions." *Id.* at 545, *citing CNW v. UTU,* 402 U.S. at 575, 578, and *Virginian Ry. v. Sys. Fed'n No. 40,* 300 U.S. 515, 548 (1937).

In *Delta v. ALPA, supra.*, the Eleventh Circuit held that a union violated Section 2 First when individual airline pilots declined extra flying (when extra flying was voluntary as to individual pilots) because the union was required to make "every reasonable effort," "to do everything possible to maintain the CBA so that commerce is not in any way interrupted." 238 F.3d at 1309. The appellate court noted that the union had admonished its members at the request of the carrier, but it had not "made 'every reasonable effort'" as it was "statutorily bound to do." *Id.* at 1309-1310. The Court said that "this dispute centers on 45 U.S.C. § 152 First, which imposes a statutory obligation 'to exert every reasonable effort to make and maintain agreements.' This clear statutory provision is at the heart of the RLA and is clearly within the province of the federal courts to enforce." *Id.* at 1308-09.

5

## ARGUMENT

### I.   TWU HAS STATED AN ENFORCEABLE CLAIM

#### A.   The Standard for Allowing a Section 2 First Claim to Proceed is a Low Threshold and TWU's Allegations are Sufficient to Survive a Motion to Dismiss

As discussed above, Section 2 First claims are legally enforceable claims. Courts have issued judgments determining whether labor or management parties have exerted "every reasonable effort" in bargaining under the RLA for decades. The United States Supreme Court has held that this Section 2 First duty is "[t]he heart of the Railway Labor Act." *CNW v. UTU*, 402 U.S. at 578-579. The U.S. "Supreme Court has clarified that Section 152, First imposes a legal duty enforceable by courts." *Delta v. ALPA*, 238 F.3d at 1304. This "language of the RLA creates a substantive legal duty enforceable by whatever appropriate means might be developed on a case-by-case basis." *Id*. at 1309. The threshold for allegations necessary to support a Section 2 First claim is low – it simply requires that a party show that the other party has failed to exert every reasonable effort in bargaining. TWU has shown that Brightline FL has failed to exert every reasonable effort to make and maintain agreements because the Company is steadfast in arguing that the RLA ultimately does not apply. Because Brightline FL contests its coverage under the RLA, the very statute that imposes the duty to exert every reasonable effort to make an agreement with TWU, its position is incompatible with the duty imposed by Section 2 First. And Brightline FL apparently believes it will eventually be relieved of RLA carrier status and the obligation to bargain with TWU, so the Company's bargaining is necessarily surface level and going through the motions while waiting for its hoped-for legal outcome. The allegations in the Union's counterclaim are sufficient for the Union's claim to proceed beyond a motion to dismiss.

In *Air Line Pilots v. Transamerica Airlines, Inc*., 817 F.2d 510, 514 (9th Cir. 1987), the airline employer argued that a union complaint had failed to state a claim. The U.S. Court of

Appeals for the Ninth Circuit rejected the company's argument because the union alleged in their complaint that "Transamerica has entered into collective bargaining negotiations with ALPA, ostensibly to conclude a new collective bargaining agreement, but in those negotiations it has failed and refused to exert reasonable efforts to reach agreement with ALPA or otherwise to negotiate in good faith with ALPA." *Id*. The court explained that this "alleged activity violates the requirement in 45 U.S.C. § 152 First that carriers 'exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes.'" *Id*. "Thus, the ALPA complaint states a claim under 45 U.S.C. § 152 First." *Id*.

The analysis in those few sentences was all the Ninth Circuit needed to reject the company's motion to dismiss in *Transamerica Airlines, Inc*: (1) the company argued that the union had failed to state a claim; but (2) the union alleged the company has failed to exert every reasonable effort in bargaining; therefore (3) the union had stated a claim under Section 2 First. Brightline FL's motion to dismiss TWU's Section 2 First claim should be rejected following the same reasoning.

To be clear, TWU is not arguing that Section 2 First claims can be based on conclusory statements in contravention of the *Iqbal* or *Twombly* pleading standards. Argument section I.A.1 of Brightline FL's motion to dismiss in the related case (1:25-cv-20863, ECF No. 22 at 15) states "TWU's claim is unsupported by the RLA's text and precedent." Further, Brightline FL argues "TWU's claim is fundamentally inconsistent with the plain text of the statute and the caselaw interpreting it" and TWU's "reading of the statute is inherently unreasonable and irrational." *Id*. at 16. Brightline FL has doubled down on that argument by stating in its reply brief (1:25-cv-20863, ECF No. 27 at 1) that TWU's "complaint advances a cause of action that has no basis in fact or law." In the motion to dismiss this counterclaim (ECF No. 58 at 15-16), Brightline FL calls TWU's Section 2 First claim "preposterous," "meritless," and "antithetical to the statute and caselaw."

7

However, TWU has illustrated that Section 2 First claims like TWU's are well established so that Brightline FL's motion to dismiss for failure to state a claim can be dismissed with minimal analysis because Brightline FL's insistence that it is not a "carrier" under the RLA is sufficient to support a Section 2 First claim. *Iqbal* and *Twombly* do not necessarily require extensive recitations of facts in great detail; all they require is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here TWU has alleged that Brightline FL denies that it is covered by the RLA. As is shown below, that allegation, which is not denied by Brightline FL, sets forth a plausible claim that Brightline FL is not complying with RLA Section 2 First.

## B. Jurisdictional Challenges and Rail Union Lawsuits Over the Company's Failure to Bargain are Two Sides of the Same Coin

Brightline Florida's RLA jurisdictional challenge and TWU's 45 U.S.C. § 152 First claim against the Company for failing to "exert every reasonable effort to make and maintain agreements and bargain in good faith" are two sides of the same coin.

TWU contends that Brightline FL is covered by the RLA, so the Company's position that it is not covered by the RLA renders it impossible for the Company to exert every reasonable effort to make an agreement as required by RLA Section 2 First; and the Company is therefore in violation of Section 2 First. Brightline FL itself has argued that "if Brightline Florida's jurisdictional challenge prevails, then the RLA does not apply to the Company" and Section 2 First would not apply. ECF No. 58 at 12. Accordingly, the causes of action of Brightline FL and TWU are not only directly related, they are intertwined.

As the court stated in *Delpro Co. v. Natl. Mediation Bd. of the U.S.*, 509 F. Supp. 468, 475 (D. Del. 1981) "when an employer challenges the NMB's jurisdiction in a post-certification proceeding, the real controversy is between the employer and the certified representative; the issue

is whether the employees' representative can compel the employer to negotiate." In *Int'l Longshoremen's Ass'n, AFL-CIO v. N.C. Ports Auth*., 463 F.2d 1, 2 (4th Cir. 1972), the North Carolina Ports Authority said that "it was forbidden by law to enter into any agreement with a labor union" and the union sued "to compel the Authority to negotiate." The U.S. Court of Appeals for the Fourth Circuit vacated the district court's decision dismissing the suit, determined the Ports Authority was a carrier under the RLA, and reinstated/remanded the union's claims for further adjudication. *Id.* at 4. This is an analogous situation with Brightline's RLA jurisdictional challenge and TWU's claim to compel the Company to bargain. As with *N.C. Ports Auth*., these claims can be evaluated simultaneously.

Indeed, TWU's cause of action would likely be considered a compulsory counterclaim to Brightline FL's complaint. Given the direct relationship between Brightline Florida's claim and TWU's claim, and the general rule that failure to raise a compulsory counterclaim in the first suit results in a waiver of that claim, TWU risked inability to litigate its claim if it did not file this counterclaim in its answer along with its motion to intervene.[1]

Brightline FL's claim contests its coverage under the RLA and TWU's counterclaim is to ensure that an RLA-covered carrier is properly bound by the Act and complies with its obligation as a carrier under that Act to exert every reasonable effort to make an agreement with TWU. These arguments are mirror images of each other. Just as the unions had enforceable claims in *Delpro* and *Ports Authority*, TWU has an enforceable claim here.

---

[1] *See e.g. Varona v. LTA Logistics, Inc*., Case No. 14-Civ-24094-COOKE/TORRES, 2016 BL 99971, at *2 (S.D. Fla. Mar. 30, 2016); *Stone Tech. (HK) Co. v. GlobalGeeks, Inc*., No. 20-cv-23251-BLOOM/Louis, 2021 BL 8077, at *4 (S.D. Fla. Jan. 11, 2021).

### C. Brightline Florida Confuses the Section 2 Ninth Duty to "Treat With" and the Section 2 First Duty to Exert Every Reasonable Effort

Brightline FL seems unable to accept that the RLA is a fundamentally different statute than the NLRA. Unlike the NLRA, which just has a single standard for recognition and bargaining in good faith, 29 U.S.C. §158(a)(5). Section 2 Ninth of the RLA is the standard for recognition ("treating with") the certified bargaining representative, and Section 2 First is an entirely different obligation for bargaining. TWU is not contesting that Brightline FL has satisfied the Section 2 Ninth obligation to treat with the Union, but Brightline FL discusses Section 2 Ninth obligations as if by satisfying them, the Company has satisfied Section 2 First. Put simply, Brightline FL has recognized the Union and scheduled meetings (satisfying Section 2 Ninth), but the Company's insistence that it is not an RLA carrier necessarily means that it is not bargaining in good faith (thereby violating Section 2 First as TWU properly alleges).

Brightline FL quotes *Virginian Ry.*, 300 U.S. at 548 for the principle that an employer's obligation under the RLA is to take the "preliminary steps without which no agreement can be reached," but this discussion was in the distinct context of the statute's "Duty to Treat" in Section 2 Ninth; 45 U.S.C. § 152 Ninth, which states: "Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter." [2] That is not the statutory section that TWU has alleged has been violated here.

---

[2] It is true that the court in *Northwest Airlines Corp. v. Association of Flight Attendants*, 483 F.3d 160, 168 (2d Cir. 2007) quoted *Virginian Ry.*'s language about "preliminary steps without which no agreement can be reached" in the context of Section 2 First. But that case was a very complex post-9/11 airline bankruptcy case where the court enjoined the union from striking after Northwest rejected the existing collective bargaining agreement and unilaterally imposed modifications on terms and conditions of employment in bankruptcy. The case "requires us to interpret and heed three different statutory schemes: Section 1113 of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1113; the Railway Labor Act of 1926 ("RLA"), 45 U.S.C. § 151 et seq.; and the Norris LaGuardia Act of 1932 ("NLGA"), 29 U.S.C. § 101 et seq." *Id.* at 166. In attempting to reconcile those three statutes, it appears the court may have misquoted a Section 2 Ninth standard in the Section 2 First context.

The distinction is critical. For example, in *CNW v. UTU*, 402 U.S. at 575, the U.S. Supreme Court cited *Virginian Ry.* as a case where the "employees sought and obtained an injunction requiring the railroad to perform its duty under § 2 Ninth to 'treat with' their certified representative" but the court noted that the injunction went further and "also compelled the railroad 'to exert every reasonable effort' to make and maintain agreements with the union," as required by § 2 First. In doing so, the decision illustrates the different obligations under Section 2 Ninth and Section 2 First. *See also Horizon Air Indus.*, Inc., 976 F.2d at 545 ("Although the initial inquiry is whether the parties have complied with the formal procedures of the RLA by meeting and exchanging proposals, a court must also determine whether one party has gone through the motions with a desire not to reach an agreement."). Again, per Brightline FL's brief (ECF No 58 at 18-19), in *Delpro Co. v. Bhd. Ry. Carmen,* 519 F. Supp. 842, 844 (D. Del. 1981) "the union sued for an order requiring the company ***to 'treat,'*** or bargain, with it as required by the Railway Labor Act." (emphasis added). But, in that same section of the decision that Brightline Florida cites, the court explained the procedural history where the union "filed with the National Mediation Board an application pursuant to Section 2 Ninth, of the Railway Labor Act," which is not at issue here.

TWU has not claimed that Brightline FL has violated Section 2 Ninth's duty to treat with the Union. But Brightline FL's stepping over that low bar by scheduling some meetings does not mean that Brightline FL has met its distinct Section 2 First duty to exert every reasonable effort to make and maintain agreements. Instead, Brightline FL's position that the RLA does not apply to the Company is incompatible with exerting every reasonable effort to make an agreement as required by Section 2 First; which TWU has alleged violates Section 2 First. TWU's counterclaim has presented a valid claim upon which relief can be granted.

### D. Brightline Florida's Position that the Company is Not Covered by the RLA is Not a Speculative Harm, but Rather is Fundamentally at Odds with Section 2 First

The "duty to exert every reasonable effort imposed by the RLA requires at least the avoidance of bad faith as defined under the NLRA, that is, going through the motions with a desire not to reach an agreement." *Horizon Air Indus., Inc*., 976 F.2d at 544 (carrier "engaged in the mere pretense of negotiation"). In other words, "superficial attempts at negotiations violate the duty to exert every reasonable effort." *Herrera v. Command Sec. Corp*., 837 F.3d 979, 992 (9th Cir. 2016).

"The bargaining status of a union can be destroyed by going through the motions of negotiating almost as easily as by bluntly withholding recognition." *CNW v. UTU*, 402 U.S. at 575. The strictest compliance with the formal procedures of the Act is meaningless if one party goes through the motions with "'a desire not to reach an agreement.'" *Horizon Air Indus., Inc*., 976 F.2d at 544. "The courts are a safeguard against merely perfunctory compliance with bargaining duties." *Air Line Pilots Assn. Intl. v. Spirit Airlines, Inc*., Case No. 08-CV-13785, 2009 BL 146394, at *8 (E.D. Mich. June 18, 2009). The question is whether the charged party "acted in good faith—that is to say, with a sincere desire to reach an agreement—or whether they acted in bad faith—that is, with the affirmative intention not to reach an agreement." *Am. Airlines, Inc. v. Air Line Pilots Ass'n*, 169 F. Supp. 777, 796 (S.D.N.Y. 1958). "The question of subjective intent may be ruled from evidence presented, including any conduct clearly showing a wish to defeat rather than to reach agreement." *Indep. Fed'n of Flight Attendants v. Trans World Airlines, Inc*., 682 F. Supp. 1003, 1020 (W.D. Mo. 1988). The evidence of Brightline FL's wish to defeat rather than reach agreement is in every court filing where the Company states that this Court should rescue Brightline FL from being designated a "carrier" under the RLA – which would eliminate union representation in the process.

Because Brightline FL absolutely insists that the RLA does not apply to the Company, its position is fundamentally at odds with the duty to exert every reasonable effort to reach a final collective bargaining agreement. Instead, all the Company can do is engage in "mere pretense" and "superficial attempts" at negotiation while Brightline FL waits for a decision that they believe will relieve them of RLA carrier status and the obligation to bargain any further. As Brightline FL says in its motion to dismiss, if "Brightline Florida receives a judgment in its favor on its APA claim, it necessarily means that it is not subject to the RLA's duty to exert every reasonable effort to make and maintain agreements." ECF No. 58 at 28. Brightline FL is wrong and the NMB correctly determined that Company is a carrier under the RLA. But the Company is clearly failing to exert every reasonable effort to make and maintain an agreement with TWU because it is just waiting to be rescued from bargaining by a court opinion.

## II.    THERE IS NO FIRST AMENDMENT ISSUE FOR BRIGHTLINE FLORIDA

### A.    <u>No One is Seeking to Block Brightline FL From Having Their APA Claim Heard</u>

Brightline FL's First Amendment argument is that "TWU's counterclaim…necessarily seeks to prevent Brightline Florida from maintaining its APA claim in this Court." ECF No. 58 at 24. How could TWU's counterclaim possibly do that? The Union has simply asked for concurrent consideration of its counterclaim with Brightline FL's APA claim. At the end of briefing on both claims, this Court can rule in one party's favor and against the other party – but Brightline FL's entire APA claim will have been fully briefed and fully heard by this Court.

If it were possible that Brightline FL really did not understand the timing on briefing these claims, any ambiguity should have been resolved by the April 30, 2025 hearing on Brightline FL's Motion for Clarification. The parties discussed the summary judgment briefing schedule. Questions about timing on briefing were resolved so that – when TWU's counterclaim survives the Motion to Dismiss – the parties would file cross-motions for summary judgment, oppositions,

replies, and resolve the opposing claims concurrently at the end. In granting Brightline FL's Motion for Clarification with an order that "the parties shall abide by the briefing schedules in this matter and in the related matter" (ECF No. 61), there should be no further confusion from Brightline FL regarding what concurrent consideration means and the Company should be reassured that they shall have their full day in court to argue their APA claim when TWU's claim advances as a counterclaim.

      If TWU were actually attempting to prevent Brightline FL from maintaining its APA claim, that would require a preliminary injunction or a ruling on TWU's counterclaim before Brightline FL could make its APA argument. The Union has never asked for that; and concurrent consideration of the APA claim and the Section 2 First counterclaim does nothing to disturb Brightline FL's access to judicial review. The Company's First Amendment argument just does not make any sense.

### B.  There Is No Conflict Between a Union's Counterclaim and an Employer's Challenge to RLA Jurisdiction – Brightline's Own Cases Confirm This

      A union's claim over duty to bargain in good faith does not interfere with an employer's ability to make a jurisdictional challenge under the RLA. In briefing on TWU's counterclaim and the Union's claim in the related case, Brightline FL has repeatedly cited cases that are directly on point regarding an employer contesting their status as a carrier under the RLA, but the Company has failed to recognize that these cases stand for the exact opposite principle of the argument they are trying to make. In both cases, the union's counterclaim seeking an injunction to bargain was considered concurrently with the employer's challenge to RLA jurisdiction.

      Brightline FL cites the *Delpro* cases for the argument that a ruling on the Company's APA claim must come first and only then could the Court begin to consider TWU's Section 2 First claim. The Company argues that "only *after* concluding that the company was subject to the RLA,

did the court issue the injunction request by the union requiring the company to bargain in good faith." ECF No. 58 at 19 (emphasis in original). Further, the Company highlights that "the district court enjoined the company to bargain with the union *three weeks* after ruling that the company was subject to the RLA." ECF No. 58 at 19 (emphasis in original). But the *Delpro* cases confirm that the employer's status as an RLA carrier and the union's injunction were ruled on ***at the same time***.

In *Delpro Co. v. Bhd. Ry. Carmen*, 519 F. Supp. 842, 849 (D. Del. 1981), the court wrote: the "Board properly concluded that Delpro's business activities and its corporate ties to a large group of rail carriers qualified it as a 'carrier' within the plain meaning of the Railway Labor Act" and "[b]ecause Delpro is a carrier, the Brotherhood Railway Carmen is entitled to an injunction." The three-week delay between the ruling and the injunction was to wait for the union to amend its pleading from a motion for a preliminary injunction to a motion for a permanent injunction.[3]

Brightline FL also cites *Int'l Longshoremen's Ass'n, AFL-CIO v. N.C. Ports Auth.*, *supra*, (ECF No. 58 at 20,  26) for the reviewability of NMB decisions. For the reasons discussed above, however, this case strongly supports TWU's procedural argument because it was a closely analogous situation of an employer challenging jurisdiction while the union's counterclaim seeking an injunction to bargain was considered concurrently.

In both the *Delpro* and *N.C. Ports Auth.* cases there was no First Amendment issue for the employers and the companies were able to have their jurisdictional challenges fully heard by the courts while the union's claim proceeded in tandem. The same concurrent evaluation of claims should happen here.

---

[3] The "Brotherhood Railway Carmen ha[d], however, moved only for preliminary injunctive relief" and "the Court will await the filing by the Brotherhood Railway Carmen of an appropriate pleading and proposed form of permanent injunction, on notice, at which time it will enter a statutory injunction pursuant to the Railway Labor Act." *Delpro*, 519 F. Supp. at 849.

### C. *Bill Johnson's Rests., Inc.* Does Not Apply And Makes No Sense in This Context

Brightline FL hangs its entire First Amendment argument on *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731(1983) and its progeny. Those cases involve injunctions preventing an employer from litigating certain claims, but nothing about concurrent consideration of TWU's counterclaim prevents Brightline FL's APA claim from being fully heard. The order in this case would simply be for Brightline FL to bargain in good faith once RLA carrier status has been confirmed. That difference is so significant that *Bill Johnson's Rests.* is inapplicable in this context. In any event, *Bill Johnson's Rests.* is an NLRA standard that does not apply to the RLA.

In *Bill Johnson's,* the court held that "the National Labor Relations Board may not enjoin the prosecution of a state-court lawsuit unless the suit lacks a reasonable basis." *Id.* at 750 (Brennan, J., dissenting). Similarly, in *Johnson & Hardin Co. v. NLRB*, 49 F.3d 237, 239 (6th Cir. 1995), blocked the NLRB's injunctive relief ordering the employer to "request the dismissal of the criminal trespass complaints, petition the court to expunge the criminal records of the union organizers, reimburse the organizers for legal fees and expenses." In *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1017 (5th Cir. 2015), the NLRB ordered the company to "rescind or revise the Arbitration and Revised Arbitration agreements, send notification of the rescission or revision to signatories and to the Alabama district court, post a notice regarding the violation at its facilities, reimburse the employees' attorneys' fees incurred in opposing the company's motion to dismiss and compel arbitration in the Alabama litigation, and file a sworn declaration outlining the steps it had taken to comply with the Board order."

By contrast, there is no aspect of TWU's claim that prevents Brightline FL from having its day in court and the Company's First Amendment rights are not implicated. Brightline FL will be able to make its full argument to this court regarding RLA jurisdiction. TWU would defend the NMB's decision and outline Brightline FL's Section 2 First obligations. At the end of concurrent

briefing on the two claims, the court could rule on both issues. A judicial determination that the NMB was correct would mean that Brightline FL is obligated to bargain in accord with Section 2 First. The First Amendment does not protect violent or unlawful conduct. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968); *Washington Legal Foundation v. Friedman*, 13 F. Supp. 2d 51, 66 (D.D.C. 1998) ("the First Amendment does not protect illegal activity"). Brightline FL does not have a First Amendment right to violate the RLA.

TWU's claim would not be an injunction preventing Brightline FL from having its day in court. The remedy TWU seeks would come at the end of concurrent consideration of TWU and Brightline's arguments and RLA jurisdiction and Section 2 First duties. TWU does not seek to bar Brightline FL from challenging the NMB's decision and there would only be an injunction after the Court had considered Brightline FL's arguments.

Brightline's argument that *Bill Johnson's Rests.* should be ported over from the NLRA to the RLA because both labor laws have the same standard for good faith bargaining should be rejected because it disregards the entire history of how those statutes have evolved and been interpreted by the courts. *Jacksonville Terminal Co.*, 394 U.S. at 383 ("the National Labor Relations Act cannot be imported wholesale into the railway labor arena."); *CNW v. UTU*, 402 U.S. at 599 ("all parallels between the NLRA and the Railway Labor Act, should be drawn with the utmost care and with full awareness of the differences between the statutory schemes"); *Klemens v. Air Line Pilots*, 736 F.2d 491, 496 (9th Cir. 1984) (the "NLRA and the RLA are fundamentally different.").[4] The other cases Brightline Florida cites offer no assistance for

---

[4] "Unlike the NLRA, however, the RLA does not establish any administrative mechanism for considering unfair labor practice charges." *Robinson v. Pan Am. World Airways, Inc.*, 777 F.2d 84, 86 (2d Cir. 1985); *Am. W. Airlines v. Nat'l Mediation Bd.*, 969 F.2d 777, 781 (9th Cir. 1992) ("As the Board concedes, it has no authority to adjudicate unfair labor practices."). The NMB "lacks authority to enforce contracts between carriers and unions", nor "may the Board determine the validity of those contracts or enforce the requirement that parties to a dispute maintain the

analyzing a Section 2 First claim because they involved entirely different statutes with specified injunctive relief or damages.[5]

Brightline FL's entire First Amendment argument is premised on the idea that TWU's claim under the RLA is the same as a union seeking injunctive relief that would order the Company to cease its lawsuit under the NLRA – those types of claims are entirely different and held to completely different standards. Concurrent litigation of the APA claim and the Section 2 First counterclaim does nothing to prevent Brightline FL from having judicial review of the NMB's ruling on the Company's status as an RLA carrier. The scheduling of the cross-motions for summary judgment make that completely clear. There is no scenario where Brightline FL is precluded from asserting its legal argument. There is no First Amendment issue presented by litigation of TWU's counterclaim.

III.  **BRIGHTLINE FLORIDA HAS ADVANCED NO VALID ARGUMENT FOR WHY A STAY WOULD BE JUSTIFIED**

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Brightline FL has made no argument for why a stay would be justified. Because Brightline FL has the burden of establishing its need for a stay, and the Company has not even attempted to argue why such a stay should be granted, Brightline's request for a stay should be denied.

---

status quo pending the results of the Act's dispute-resolution mechanism" and the NMB has "no adjudicatory authority with regard to major disputes" under the RLA. *Teamsters v. Tex. Int'l Airlines, Inc.*, 717 F.2d 157, 159 (5th Cir. 1983). There is no analogy that can be drawn between *Bill Johnson's* restrictions on NLRB orders in response to unfair labor practices and the RLA.

[5] *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 509 (1972) was a "civil suit under § 4 of the Clayton Act, 38 Stat. 731, 15 U. S. C. § 15, for injunctive relief." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49 (1993) held that a that a person cannot incur antitrust liability for bringing a lawsuit. *Smith v. Miami-Dade County*, 621 F. App'x 955, 959 (11th Cir. 2015) involved potential liability for retaliation under the Americans with Disabilities Act. None of those cases are comparable to an RLA Section 2 First claim.

18

In Brightline's Motion to Dismiss in the related case (1:25-cv-20863, ECF No. 22 at 23), the Company cited this court's decision in *Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.,* Case No. 16-cv-60695-GAYLES, 2016 BL 309810 for the standard on when to grant a stay while ignoring that this Court relied on the four traditional factors a movant must satisfy to justify a stay: "(1) the likelihood of the moving party ultimately prevailing on the merits; (2) the extent the moving party would be irreparably harmed absent the stay; (3) potential for harm to the opposing party if the stay is issued; and (4) whether issuing a stay would be in the public interest." *Id.* at *4. Courts in the Southern District routinely use this standard. *See e.g. Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *SEC v. MCC Int'l Corp.*, No. 2:22-cv-14129-KMM, 2023 BL 311939, at *2 (S.D. Fla. Mar. 14, 2023); *Grace, Inc. v. City of Miami*, 685 F. Supp. 3d 1365, 1370 (S.D. Fla. 2023).

In response to TWU pointing this out in its opposition brief in the related case, Brightline has pivoted here and de-emphasized *Werteks* in the Motion to Dismiss in this case (ECF No. 58 at 27-28) and is instead focusing on several out-of-circuit cases that use an alternative standard for granting a stay. Of those, *Hart v. Charter Commc'ns, Inc.*, No. SA CV 17-0556-DOC (RAOx), 2019 BL 508695, at *3-4 (C.D. Cal. Aug. 1, 2019) specifically acknowledges that it is an unsettled matter in the Ninth Circuit whether courts should use the "traditional criteria" governing stays from *Nken v. Holder*, 556 U.S. 418 (2009) – which are the four factors this Court used in *Werteks* – or an alternative three factor test from *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). *O'Boyle v. Town of Gulf Stream*, No. 19-cv-80196-BLOOM/Reinhart, 2020 BL 217613, at *3 (S.D. Fla. Mar. 27, 2020), while in circuit, dealt with a stay due to pending lawsuit in another forum that could have produced inconsistent results – something that is easily distinguishable from TWU's compulsory counterclaim being heard by the same court as Brightline FL's APA claim.

Brightline FL has not addressed the necessary factors. The Company most certainly cannot show how Brightline FL would be irreparably harmed absent the stay, how it would be likely to succeed on the merits, or how such a stay could serve the public interest. While Brightline FL needlessly delays this case with unsupported procedural motions and efforts to stay the resolution of TWU's claim, there are 83 On Board Service employees who must wait for Brightline FL to accept that the Company really is a carrier under the RLA in order to complete bargaining for a first contract and begin improving their rates of pay, work rules, and working conditions.

As to expenditure of judicial resources, Brightline FL has asserted that dismissal of the counterclaim would promote judicial economy, but it has not made any showing that supports that contention. TWU submits that resolving TWU's Section 2 First counterclaim concurrently with Brightline FL's complaint simply does not require expenditure of significant extra judicial resources when the facts and legal arguments to be presented in TWU's case and Brightline FL's case will be essentially the same And no harm would come to Brightline FL from litigation  over TWU's counterclaim – it will simply reinforce that the Company is covered by the RLA and must come to the bargaining table to negotiate with the Union in good faith. TWU does not intend to delay the handling of this litigation and has worked with the other parties and is prepared to work with the Court on a case management schedule that will provide for efficient and timely resolution of the issues.

In the end, Brightline FL has not even attempted to satisfy its burden as to the four factors necessary to establish the Company's need for a stay. In fact, judicial economy would be promoted by hearing the claims concurrently. Brightline FL's request for a stay should be rejected.

## **CONCLUSION**

For the foregoing reasons, TWU respectfully submits that Brightline FL's motion for dismissal or stay of the Union's counterclaim should be denied.

Dated: May 7, 2025

Respectfully submitted,

*/s/ Mark H. Richard*
Mark H. Richard
Florida Bar No. 305979
Christina S. Gornail
Florida Bar No. 085922
PHILLIPS, RICHARD & RIND, P.A.
9360 S.W. 72nd Street, Suite 283
Miami, FL  33173
Telephone: (305) 412-8322
Facsimile: (305) 412-8299
Email: mrichard@phillipsrichard.com
Email: cgornail@phillipsrichard.com

Richard S. Edelman *
Aaron S. Edelman *
MOONEY, GREEN, SAINDON, MURPHY & WELCH
1620 Eye Street, N.W.,  Suite 700
Washington, D.C.  20006
Telephone: (202) 783-0010
Facsimile: (202) 783-6088
Email: redelman@mooneygreen.com
Email: aedelman@mooneygreen.com

*Attorneys for TWU*

* Admitted Pro Hac Vice

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Ellen Crisham Pellegrini, Esq. epellegrini@sidley.com, Raymond Atkins, Esq., ratkins@sidley.com, Terence Hynes, Esq. Thynes@sidley.com, Lawrence Silverman, Esq. Lawrence.silverman@sidley.com, Counsel for Plaintiff and Anthony Erickson-Pogorzelski, Esq. Anthony.porgorzelski@usdoj.gov, Counsel for Defendants and other parties of record via Electronic Filing generated by CM/ECF.

*/s/ Mark H. Richard*
Mark H. Richard
