UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-CV-24734-DPG

BRIGHTLINE TRAINS FLORIDA LLC,

      Plaintiff,

v.

NATIONAL MEDIATION BOARD,

      Defendant,

_____/

**ORDER**

**THIS CAUSE** comes before the Court upon Plaintiff Brightline Trains Florida LLC's ("Brightline") Motion for Summary Judgment, [ECF No. 77], and Defendant National Mediation Board's ("NMB") Motion for Summary Judgment, [ECF No. 74]. The Court has considered the record, the parties' submissions, and applicable law. For the following reasons, the NMB's Motion for Summary Judgment is **GRANTED**, and Brightline's Motion for Summary Judgment is **DENIED**.

I.     **BACKGROUND**

     A.    **Factual History**[1]

The United States railway industry is overseen by several federal agencies, including the NMB and the Surface Transportation Board ("STB"). Pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., the NMB is responsible for resolving labor disputes and facilitating

_____

[1] The facts in this matter are gleaned from the NMB's Statement of Material Facts [ECF No. 75] and Brightline's Statement of Material Facts Pursuant to Local Rule 56.1. [ECF No. 78].

collective bargaining within the railroad industry. The STB's responsibilities include overseeing the construction and operation of railways.

Brightline is a privately owned passenger railroad company that operates exclusively in Florida. In 2012, Brightline[2] requested permission from the STB to construct and operate a passenger rail line between Miami and Orlando, Florida. At the same time, Brightline asked the STB to dismiss its permission request on the grounds that the STB lacked jurisdiction over Brightline. The STB agreed and found that it had no jurisdiction over Brightline's proposed rail line because Brightline's passenger operations would be solely intrastate and would not be a part of the interstate rail network.

Brightline currently operates between Miami and Orlando, with intermediate stops in Aventura, Fort Lauderdale, Boca Raton, and West Palm Beach. In Boca Raton, the passenger rail station, parking garage, and track infrastructure were constructed and improved with funds from the Consolidated Rail Infrastructure and Safety Improvements ("CRISI") grant program. Through this federal program, under 49 U.S.C. § 22907, entities may receive grants to improve passenger rail transportation systems.

Brightline employs On-Board Service Employees (the "Employees"), that include train and service attendants, chefs, and culinary specialists. On August 8, 2024, the Transport Workers Union of America, AFL-CIO ("TWU"), filed an application with the NMB, stating that Brightline's Employees were having a representation dispute. The TWU requested that the NMB conduct a dispute investigation and hold an election to identify the Employees' authorized representative. In response to the TWU's application, Brightline argued that the NMB lacked jurisdiction over the representation dispute because (1) Brightline is not subject to the STB's

---

[2] At that time, Brightline was known as All Aboard Florida – Operations LLC and All Aboard Florida – Stations LLC.

jurisdiction, and thus is not a carrier under the RLA, and (2) 49 U.S.C. § 22905(b) did not render Brightline otherwise subject to the RLA.

On November 12, 2024, the NMB found that Brightline is a carrier subject to the jurisdiction of the RLA pursuant to § 22905(b). Based on that determination, the NMB assumed jurisdiction over the TWU's application and conducted a representation election. On January 15, 2025, following a majority vote for the TWU, the NMB certified the TWU as the Employees' representative. On January 29, 2025, the TWU notified Brightline of its intention to negotiate with Brightline on the Employees' pay and working conditions. Brightline responded and provided potential dates to meet with the TWU to begin negotiations.

### B.      Procedural History

On December 4, 2024, Brightline filed this action against the NMB, seeking to set aside the NMB's determination that Brightline qualifies as a carrier under the RLA, subjecting Brightline to the NMB's jurisdiction. [ECF No. 1]. On February 28, 2025, the TWU filed a Motion to Intervene, [ECF No. 28], which was granted by the Court. [ECF No. 44]. On August 29, 2025, the NMB moved for summary judgment against Brightline and filed its Statement of Material Facts supporting its motion. [ECF Nos. 74, 75]. On the same date, Brightline moved for summary judgment against the NMB and filed its Statement of Material Facts supporting its motion. [ECF Nos. 77, 78]. Briefs were filed in opposition to the motions. [ECF Nos. 80, 83, 84, 85, 86].

## II.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (*quoting* Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides

that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). But to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## III.    ANALYSIS

Brightline argues that the "RLA expressly limits the NMB's jurisdiction to railroads that are subject to the jurisdiction of the STB. Because the STB does not have jurisdiction over Brightline Florida, Brightline Florida is not a 'carrier' under Section 151, First of the RLA as a matter of law, and therefore is not subject to the NMB's jurisdiction." [ECF No. 77 at 25]. The

NMB argues that being subject to the STB is not a prerequisite to being subject to the RLA. [ECF No. 74]. The Court agrees with the NMB.

### A.      The Railway Labor Act

The RLA defines carrier broadly, stating:

> The term "carrier" includes any railroad subject to the jurisdiction of the Surface Transportation Board, any express company that would have been subject to subtitle IV of Title 49, as of December 31, 1995, . . . and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad . . . *Provided, however*, That the term "carrier" shall not include any street, interurban, or suburban electric railway . . .

45 U.S.C. § 151, First.

Despite Brightline's contentions, the RLA does not define carriers as railroad companies subject to the STB. Rather, the RLA states that "'carrier' *includes* any railroad subject to the jurisdiction of the Surface Transportation Board[.]" 45 U.S.C. § 151, First. (emphasis added). The statute also provides examples of other entities considered carriers. *Id*. The statute's use of the word "includes" is important because "[t]he use of the word "includes" in a definitional section is usually taken to mean that it may include other things as well." *Hall v. Sargeant*, No. 18-80748-CIV, 2020 WL 1536435, at *22 (S.D. Fla. Mar. 30, 2020). *See also Glover v. Ocwen Loan Servicing*, *LLC*, 127 F.4th 1278, 1289 (11th Cir. 2025) ("In statutes, the verb 'to include' typically introduces examples, not an exhaustive list."). And while § 151, First, excludes some entities from the definition of "carrier", intrastate railways (like Brightline) are not excluded. Thus, Brightline is not excluded from the NMB's jurisdiction merely because it is not subject to the jurisdiction of the STB.

The Court's reading of § 151, First, is supported by the RLA's jurisdiction over airlines. Airlines are not explicitly identified as carriers in § 151, First, nor are they subject to the STB's jurisdiction. Even so, they are clearly considered carriers by air under the RLA. *See* 45 U.S.C. §

181. Therefore, § 151, First, is best understood as providing examples of carriers subject to the RLA but not an exhaustive list.

Finally, the Court is guided by additional RLA language detailing the NMB's broad authority over representation disputes with carrier employees. According to § 152, Ninth, "[i]f any dispute shall arise among a carrier's employees as to who are the representatives of such employees . . . it shall be the duty of the [NMB] . . . to investigate such dispute[.]" 45 U.S.C. § 152, Ninth. According to § 183(a), "either party to a dispute between an employee or a group of employees and a carrier or carriers by air may invoke the services of the [NMB]." 45 U.S.C. § 183(a). Importantly, neither section limits the NMB's jurisdiction to carriers that are subject to the STB.

**B.      Consolidated Rail Infrastructure and Safety Improvements Program**

The Court further finds that Brightline is a carrier subject to the RLA because it conducts operations over rail infrastructure constructed and improved with federal CRISI funds. Congress created the CRISI program to "assist in financing the cost of improving passenger and freight rail transportation systems in terms of safety, efficiency, or reliability." 49 U.S.C. § 22907(a). CRISI grant conditions are set forth in 49 U.S.C. § 22905. Section 22905(b) describes operators deemed rail carriers under the program:

> A person that conducts rail operations over rail infrastructure constructed or improved with funding provided in whole or in part in a grant made under this chapter **shall be considered a rail carrier as defined in section 10102(5) of this title for purposes of this title and any other statute** that adopts that definition or **in which that definition applies, including—**
>
> (1) the Railroad Retirement Act of 1974 (45 U.S.C. 231 et seq.);
>
> (2) **the Railway Labor Act (45 U.S.C. 151 et seq.)**; and
>
> (3) the Railroad Unemployment Insurance Act (45 U.S.C. 351 et seq.).

49 U.S.C. § 22905(b) (emphasis added).

Section 10102(5) defines a rail carrier as "a person providing common carrier railroad transportation for compensation, but does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation[.]" 49 U.S.C. § 10102(5). It is clear that Brightline qualifies as a rail carrier under § 10102(5).

Brigthline acknowledges that it operates over rail infrastructure improved with CRISI grants. Nevertheless, Brightline argues that "all Section 22905(b) does is further define who qualifies as a Section 10102(5) 'rail carrier'" [ECF No. 77 at 27], and that "nothing in Section 22905(b) operates to make a person that is not otherwise subject to the STB's jurisdiction a covered 'carrier' for purposes of the RLA." *Id*. Brightline focuses on the fact that the RLA uses the term "carrier", not "rail carrier", and that the RLA does not adopt § 10102(5)'s definition. Brightline also reiterates its argument that to be a carrier under the RLA, the entity must be subject to the STB. As a result, Brightline states that it is not subject to the RLA or the NMB's jurisdiction. Conversely, the NMB argues that "under § 22905(b), CRISI grant recipients are deemed rail carriers subject to the jurisdiction of the RLA." [ECF No. 74 at 12]. The Court agrees with the NMB.

Section § 22905(b) states that a person that conducts rail operations over rail infrastructure constructed or improved with funding provided in whole or in part through a CRISI grant "shall be considered a rail carrier as defined in section 10102(5) . . . and any other statute … in which that definition applies including . . . the Railway Labor Act (45 U.S.C. 151 et seq.)[.]" 49 U.S.C. § 22905(b). As noted above, there is no dispute that Brightline operates over track infrastructure that was constructed and improved with CRISI grants.

As discussed earlier, § 151, First, broadly defines entities that shall be deemed carriers subject to the RLA. Section 22905(b)'s specific references to § 151 and other federal statutes that

define carriers (the Railroad Retirement Act of 1974, 45 U.S.C. 231 et seq., and the Railroad Unemployment Insurance Act, 45 U.S.C. 351 et seq.) demonstrate Congress' intent that companies conducting operations over railway infrastructure constructed or improved with federal funds be subject to federal railway laws.[3]

Brightline argues that "all Section 22905(b) does is further define who qualifies as a Section 10102(5) 'rail carrier'" [ECF No. 77 at 27]. But, if that were Congress' intent, there would be no reason for citing specific passages defining carriers under other federal railway laws. Importantly, courts "must not read any provision, or even any word, of a statute so as to make it superfluous[.]" *United States v. Focia*, 869 F.3d 1269, 1283 (11th Cir. 2017) (internal quotation omitted); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."). Furthermore, if § 22905(b) does not bring those operating on railways and infrastructure improved by CRISI-grants  under the purview of federal railway laws, then being deemed a rail carrier through the CRISI program would carry little significance overall. Thus, the Court finds that Brightline's interpretation of the statute is erroneous.

Finally, the Court is unpersuaded by Brightline's argument that the RLA's use of the term "carriers" and § 22905(b)'s use of the term "rail carriers" represents a remarkable and key distinction. The RLA uses the broader term "carriers" as it applies both to air and rail carriers. *See*

---

[3] Congress customarily conditions the receipt federal funding with compliance with federal statutes. *See S. Dakota v. Dole*, 483 U.S. 203, 206 (1987) ("Congress may attach conditions on the receipt of federal funds and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives") (internal quotation omitted). Thus, the Court's interpretation of § 22905(b)—that Congress conditioned receiving federal grants to improve railway infrastructure with the recipient's compliance with federal railway laws—is both logical and aligned with customary Congressional practice.

45 U.S.C. § 151, First; § 181. And there would be no reason to use the broad term "carriers" in § 22905(b) because CRISI grants are limited to the improvement of railways and related infrastructure, not airways and airports.

Thus, the Court finds that, under § 22905(b), Brightline is a carrier subject to the RLA. Therefore, the NMB was within its authority to assume jurisdiction over the representation dispute between Brightline and its Employees.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      Defendant National Mediation Board's Motion for Summary Judgment [ECF No. 74] is **GRANTED**.

2.      Plaintiff Brightline Trains Florida LLC's Motion for Summary Judgment [ECF No. 77] is **DENIED**.

3.      This case is **CLOSED**, and all pending motions are **DENIED** as **MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of March 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE